ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| CYNTHIA RIVERA MORALES<br><br>Parte Recurrente<br><br>v.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Parte Recurrida | TA2025RA00024 | *Revisión Judicial,* procedente de la Junta de Apelaciones de la Corporación del Fondo del Seguro del Estado<br><br>Caso Núm.:<br>JA-11-99<br><br>Sobre:<br>Impugnación de Convocatoria |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de julio de 2025.

Compareció ante este Tribunal la parte recurrente, Sra. Cynthia Rivera Morales (en adelante, "la señora Rivera Morales" o "Recurrente"), mediante recurso de revisión judicial y nos solicitó la revocación de la *Decisión y Orden de Archivo con Perjuicio* que notificó la Junta de Apelaciones para los Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado (en adelante, la "Junta") el 24 de abril de 2025.[1] En el referido dictamen, la Junta decretó el cierre y archivo, con perjuicio, de la apelación que presentó la señora Rivera Morales ante dicho ente administrativo.

Por los fundamentos que expondremos a continuación, se *revoca* la *Resolución* recurrida.

**I.**

El 14 de noviembre de 2011, la señora Rivera Morales presentó ante la Junta la "**Apelación JA-1-99**", en la que impugnó su exclusión de la

---

[1] *Véase*, SUMAC-TA, Apéndice, Anejo I.

certificación de candidatos elegibles para la convocatoria número 139-11 sobre la posición de Secretaria Ejecutiva IV.[2] Además, cuestionó el proceso de reclutamiento y selección de candidatos que llevó a cabo la Corporación del Fondo del Seguro del Estado (en adelante, "el Fondo" o "Recurrida") para dicho puesto.[3]

Tras once (11) años de la presentación de la apelación, el 28 de julio de 2022, la Junta notificó una *Orden* mediante la cual le concedió un término de veinte (20) días a la Recurrente para que mostrara causa por la cual no debía archivar con perjuicio la apelación que presentó, debido a su abandono e inactividad en el caso.[4] Ante el incumplimiento de la señora Rivera Morales, el 9 de septiembre de 2022, la Junta emitió una *Decisión y Orden* en la que decretó el cierre y archivo con perjuicio de la "**Apelación JA-1-99**", por incumplimiento con la *Orden* del 28 de julio de 2022, en virtud del Artículo 14.7 del Reglamento de la Junta de Apelaciones para Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado de 31 de agosto de 1999 (en adelante, "Reglamento de la Junta").[5]

Inconforme, el 2 de octubre de 2022, la señora Rivera Morales presentó una "**Solicitud de Reconsideración**", en la que expuso que hubo varios eventos que afectaron la continuidad del caso, entre éstos: que la Junta estuvo sin constituirse por un periodo considerable de tiempo, el paso del Huracán María por Puerto Rico, la pandemia del Covid-19 y la falta de representación legal de ambas partes.[6] Argumentó, además, que la falta de movimiento en el caso no fue por falta de interés, ni mala fe y tampoco afectó al Fondo.

Después de considerar la petición de la Recurrente, el 5 de octubre de 2022, la Junta declaró "Ha Lugar" la petición de la señora Rivera Morales y dejó sin efecto la *Decisión y Orden*. Además, ordenó al Fondo a notificar su representación legal dentro de un término de treinta (30) días y señaló la celebración de una vista de estatus para 23 de febrero de 2023.[7] Por último,

---

[2] Íd., Anejo II.
[3] Íd.
[4] Íd., Anejo III.
[5] Íd.
[6] Íd., Anejo IV.
[7] Íd., Anejo V.

le advirtió a las partes que el incumplimiento con lo ordenado en el plazo concedido conllevaría la imposición de sanciones, la eliminación de las alegaciones, la anotación de rebeldía, la eliminación de defensas o la desestimación de la apelación, conforme dispone el Artículo 8 del Reglamento de la Junta.

Vencido el aludido plazo, el 22 de febrero de 2023, la Junta le concedió al Fondo un término de veinte (20) días para que mostrara causa por la cual no se le debían imponer sanciones por el incumplimiento con la *Orden* del 5 de octubre de 2022.[8] También dejó sin efecto la vista de estado de los procedimientos señalada para el 23 de febrero de 2023 y fijó una fecha para dicho señalamiento a celebrarse el 18 de julio de 2023. Por último, ordenó a las partes a que llevaran a cabo el descubrimiento de prueba.

Al día siguiente del aludido dictamen, el Fondo presentó una "**Moción en Cumplimiento de Orden**" en la que informó la contratación de su representación legal.[9] Así las cosas, el 23 de septiembre de 2023, la Junta notificó una *Orden de Transferencia de Vista* para reseñalar la audiencia del 18 de julio de 2023, para el 16 de enero de 2024, por causa de que la Junta no estaba constituida para la fecha en que estaba pautada la misma.[10]

Llegado el día del señalamiento, la Recurrente solicitó que se acordara un calendario estricto. El Fondo se opuso a la petición y señaló que la señora Rivera Morales no cumplió con la *Orden* del 28 de julio de 2022. Cuestionó que la Junta le concediera un plazo de veinte (20) días para contestar su incomparecencia once (11) años después. Luego de escuchar los argumentos de las partes, la Junta ordenó al Fondo a que presentara una moción dispositiva en un término de treinta (30) días. Asimismo, le concedió a la Recurrente un plazo de treinta (30) días para replicar y ordenó la celebración de una vista de estado de los procedimientos para el 27 de junio de 2024.[11]

---

[8] Íd., Anejo VI.
[9] Íd., Anejo VII.
[10] Íd., Anejo VIII.
[11] Íd., Anejo IX.

En cumplimiento con lo ordenado, el Fondo presentó una "**Moción Informativa y Solicitando Desestimación**".[12] En ella, reiteró su petición de archivo del caso, debido a la falta de interés en el trámite del pleito y al supuesto continuo incumplimiento de la Recurrente con las órdenes de la Junta desde el año 2011.

En desacuerdo, la Recurrente presentó una "**Moción para que se Tenga por no Puesta 'Moción Informativa y Solicitando Desestimación' Presentada por la Apelada**".[13] Expuso que la petición del Fondo era improcedente, pues luego de que ésta presentó su "**Solicitud de Reconsideración**", sin la oposición del Fondo, la Junta reconsideró su determinación y levantó el archivo del caso. Añadió que el Fondo también incumplió al no presentar su moción dispositiva dentro del plazo requerido por la Junta, por lo que correspondía que se diera por no puesta y se ordenara la continuación de los procedimientos.

Las partes argumentaron sus respectivas mociones en una vista de estatus el 27 de junio de 2024.[14] El Fondo manifestó estar en contra de la reapertura del caso. Además, informó que no pudo recopilar la prueba del pleito por los años transcurridos. Por su parte, la Recurrente reiteró que el proceso debía continuar. Luego de escuchar los planteamientos de las partes, la Junta ordenó la celebración de una nueva vista para el 28 de enero 2025.

Sin embargo, el 27 de enero de 2025, la Junta dejó sin dicho señalamiento, debido a que se llevaría a cabo una Reunión Ejecutiva de dicho cuerpo.[15] A su vez, informó que posteriormente se emitiría una *Orden* con el nuevo señalamiento de la vista.

No obstante, el 24 de abril de 2025, la Junta emitió una *Decisión y Orden de Archivo con Perjuicio* de la "**Apelación JA-1-99**", conforme a lo dispuesto en el Artículo 14.7 del Reglamento de la Junta.[16] Basó su decisión

---

[12] Íd., Anejo XI.
[13] Íd, Anejo XII.
[14] Íd, Anejo XIII.
[15] Íd, Anejo XIV.
[16] Íd, Anejo I.

en que la conducta de la Recurrente demostró "una clara e inequívoca desatención, abandono y desinterés en la apelación presentada".

Oportunamente, la Recurrente presentó una "**Solicitud de Reconsideración**", que fue declarada "académica" por la Junta el 12 de junio de 2025.[17] Inconforme, la señora Rivera Morales acudió ante nosotros mediante el recurso de epígrafe en el que señaló como único error el siguiente:

> Erró la Junta de Apelaciones para Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado al archivar con perjuicio la apelación por alegados incumplimientos de la parte apelante que no se sustenta en el récord administrativo.

El 27 de julio de 2025, compareció el Fondo mediante "**Alegato en Oposición a Solicitud de Revisión Administrativa**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021).

Sin embargo, recientemente, nuestro Tribunal Supremo cambió esta norma de deferencia hacia las decisiones administrativas, al adoptar la opinión del Tribunal Supremo de los Estados Unidos en el caso de Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024). En específico,

---

[17] Íd, Anejo XV y XVI.

determinó que la interpretación de las leyes es una tarea que le corresponde a los tribunales y dispuso que estos, en el ejercicio de su función revisora, deberán actuar con el rigor que prescribe la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico de 2017 y no ser guiados por la deferencia automática. Vázquez v. Consejo de Titulares, 2025 TSPR 56, 215 DPR ___.

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 (3 LPRA sec. 9675) (en adelante, "la LPAU") dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999). Además, debe demostrar que existe otra prueba en el expediente que

reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, deben ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

No obstante, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**B.**

La Sección 7 del Artículo II de la Constitución de Puerto Rico le asegura a todo ciudadano que no será privado de su propiedad o libertad, sin un debido proceso de ley. 1 LPRA Art. II, Sec. 7. Esta garantía proviene de las Enmiendas V y XIV de la Constitución de los Estados Unidos de América. La cláusula del debido proceso de ley en la jurisdicción federal tiene como fin ulterior evitar que el Gobierno utilice sus poderes como un instrumento de subyugación. Davidson v. Cannon, 474 US 344, 348 (1986). También se implantó para impedir que dichas facultades sean manejadas de manera arbitraria e irrazonable. Daniels v. Williams, 474 US 327, 331 (1986). Existen dos dimensiones de este principio cardinal: (1) la procesal y (2) la sustantiva. Rodríguez Rodríguez v. E.L.A., 130 DPR 562, 575 (1992).

Tanto en la jurisdicción local como en la federal, la vertiente sustantiva del debido proceso de ley se enfoca en proteger los derechos fundamentales de los individuos. *Véase*, Marina Ind., Inc. v. Brown Boveri Corp., 114 DPR 64, 81 (1983). Apoyado en lo anterior, se ha recalcado que el Estado no puede interferir con los intereses propietarios y libertarios de un individuo de manera irracional, injustificada o caprichosa. En su aspecto procesal, esta disposición le atribuye el deber al Estado de garantizarle a toda persona que en aquellas instancias en las que se pretenda intervenir con la libertad o propiedad de esta última, el proceso sea uno justo, equitativo e imparcial. López Vives v. Policía de Puerto Rico, 118 DPR 219, 231 (1987).

Para que surta efecto la protección que brinda este derecho constitucional en su ámbito procesal, tiene que estar en peligro un interés individual ya sea libertario o propietario. "Una vez cumplido este requisito, corresponde determinar cuál es el procedimiento exigido (what process is due)". Rodríguez Rodríguez v. E.L.A., *supra*, pág. 578. Dependiendo del contexto, "diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental sea justo e imparcial". Íd.

En armonía con lo anterior, en Mathews v. Eldridge, 424 US 319 (1976), el Tribunal Supremo de los Estados Unidos estableció los criterios que deben ser examinados a la hora de determinar el procedimiento adecuado para privarle a una persona de algún derecho de propiedad o libertad. Éstos son los siguientes: "(1) los intereses individuales afectados por la acción del gobierno; (2) el riesgo de una determinación errada que prive al individuo del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o diferentes y (3) el interés gubernamental protegido con la acción sumaria y la viabilidad de usar métodos alternos". Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 888 (1993).

Desde esta perspectiva, el debido proceso de ley exige que en todo procedimiento adversativo se cumplan ciertas formalidades, a saber: (1) la

notificación adecuada de la reclamación instada; (2) que el proceso se lleve a cabo ante un juzgador imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) estar asistido por un abogado, y (6) que la decisión sea basada en el expediente. Íd., pág. 889.

Igualmente, la Sección 3.1 de la LPAU reconoce las garantías del debido proceso de ley en su vertiente procesal que se aplican en los procedimientos administrativos de naturaleza adjudicativa en general. 3 LPRA sec. 9641. De modo que a las partes le asisten los mismos derechos durante el trámite administrativo, a saber: (a) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial; (d) derecho a que la decisión sea basada en el expediente. Íd.; Calderón Otero v. C.F.S.E., 181 DPR 386, 399 (2011); Magriz v. Empresas Nativas, 143 DPR 63, 70 (1997).

**C.**

"La desestimación de una reclamación es un pronunciamiento judicial que, cuando se entiende como una resolución del caso en los méritos, ha sido caracterizada como la sanción máxima, la pena de muerte procesal, contra una parte". VS PR, LLC v. Drift-Wind, 207 DPR 253, 264 (2021) (citando a R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 250). Por ello, la importancia de conocer el efecto de la desestimación estriba en que, si se considera una adjudicación terminante, no podría volverse a presentar una reclamación sobre la misma controversia por ser de aplicación la doctrina de cosa juzgada. Díaz Maldonado v. Lacot, 123 DPR 261, 274-275 (1989).

A pesar de que nuestro derecho procesal civil confiere la facultad a los tribunales para desestimar pleitos con perjuicio en determinadas circunstancias, esta facultad "se debe ejercer juiciosa y apropiadamente". Maldonado v. Srio. de Rec. Naturales, 113 DPR 494, 498 (1982). Esto se debe a que "la desestimación priva al demandante de su día en corte para

hacer valer las reclamaciones que válidamente tenga en contra de otros". VS PR, LLC v. Drift-Wind, *supra*, pág. 264. Partiendo de lo anterior, se ha interpretado que cuando un tribunal desestima un pleito, generalmente tiene discreción para determinar si la desestimación será sin perjuicio, posibilitando así una posterior presentación de la misma reclamación.

En un ejercicio de delimitar el alcance de la finalidad de las desestimaciones, en VS PR, LLC v. Drift-Wind, *supra*, nuestro máximo foro judicial acudió a la Regla 39.2 de Procedimiento Civil, 32 LPRA Ap. V, que contiene distintas modalidades de la figura de la desestimación. Entendió que la precitada disposición ilustra el efecto generalmente atribuible a las desestimaciones. Señaló que "a menos que el tribunal lo disponga de otro modo, una desestimación bajo la Regla 39.2 de Procedimiento Civil, *supra* —ya fuera por incumplimiento con las órdenes del tribunal, inactividad o por insuficiencia de prueba— tiene el efecto de una adjudicación en los méritos (*i.e.,* es con perjuicio)". Íd., pág. 266. Añadió, incluso, que dicha norma es aplicable no sólo a las desestimaciones decretadas bajo la Regla 39.2 de Procedimiento Civil, *supra*, sino que es igualmente aplicable cuando se trata de cualquier otra desestimación. Íd. La alta curia aclara, no obstante, que la aludida consecuencia es inaplicable cuando la desestimación haya sido dictada por falta de jurisdicción, por haberse omitido acumular una parte indispensable o si otra norma pauta un efecto específico para determinada desestimación. "Empero, en ausencia de tales excepciones, la norma detallada cobija a cualquier desestimación decretada". Íd., pág. 267.

Asimismo, el Tribunal Supremo estableció que cuando un tribunal contemple iniciar un curso de acción que prive a una parte de un remedio judicial, debe tomar en cuenta factores tales como: (1) la política que favorece la adjudicación del litigio en su fondo; (2) la política que fomenta la disposición justa, rápida y económica del caso; (3) el grado al cual la parte a ser sancionada actuó deliberadamente y supo o debió haber sabido las consecuencias de sus actos; (4) el grado de responsabilidad de la parte en la acción que se va a sancionar; (5) los méritos y la importancia de la reclamación, y (6) el impacto sobre otras partes y sobre el interés público.

Íd., pág. 274. Esbozados los elementos constitutivos del referido análisis, el

máximo foro judicial estatal concluyó lo siguiente:

> La política judicial reseñada instruyó que la desestimación con efecto de adjudicación en los méritos debe declararse juiciosamente. Los jueces de instancia deben, mediante su juicio valorativo, dirimir si están presentes las circunstancias apremiantes para desestimar una demanda con perjuicio. Ahora bien, si al sopesar los factores pertinentes el foro primario determina que la desestimación debe ser sin perjuicio, tal actuación es válida salvo que se haya incurrido en un abuso de discreción. En ausencia de esto último, los tribunales apelativos no deben intervenir con la decisión del Tribunal de Primera Instancia de hacer la desestimación una con o sin perjuicio. Íd., págs. 274-275.

Específicamente, la Regla 39.2 (a) y (b) de Procedimiento Civil

dispone lo siguiente:

> (a) Si la parte demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud de la parte demandada podrá decretar la desestimación del pleito o de cualquier reclamación contra ésta o la eliminación de las alegaciones, según corresponda. Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o la abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá decretar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.

> (b) El tribunal ordenará la desestimación y el archivo de todos los asuntos civiles pendientes en los cuales no se haya efectuado trámite alguno por cualquiera de las partes durante los últimos seis meses, a menos que tal inactividad se le justifique oportunamente. Mociones sobre suspensión o transferencia de vista o de prórroga no serán consideradas como un trámite a los fines de esta regla. El tribunal dictará una orden en todos dichos asuntos, la cual se notificará a las partes y al abogado o abogada, requiriéndoles dentro del término de diez (10) días desde que el Secretario o Secretaria les notifique, que expongan por escrito las razones por las cuales no deban desestimarse y archivarse los mismos. 32 LPRA Ap. V, R.39. 2 (a) y (b).

El inciso (a) de la precitada regla exige a los tribunales que, previo a

la desestimación de la demanda o la eliminación de las alegaciones,

notifique y aperciba directamente al abogado de la parte que ha incumplido con una orden del tribunal para darle la oportunidad de corregir el incumplimiento. HRS Erase v. CMT, 205 DPR 689 *supra*, 707-708 (2020). De este no responder o cumplir con el primer aviso del tribunal, las reglas autorizan la imposición de sanciones al representante legal de la parte y, de persistir el incumplimiento, se deberá apercibir a la parte de los incumplimientos de su representación legal y de las consecuencias de dichos incumplimientos. Íd., pág. 709. Dicha notificación a la parte se constituye como:

> [U]n componente medular de la administración de la justicia, pues "brinda a las partes la oportunidad de advenir en conocimiento real de la determinación tomada, a la vez que otorga a las personas cuyos derechos pudieran verse transgredidos una mayor oportunidad de determinar si ejercen o no los remedios que le han sido concedidos por ley". Íd. (citando a Asoc. Vec. Altamesa Este v. Mun. San Juan, 140 DPR 24, 34 (1996)).

Siendo así, el Tribunal Supremo ha expresado que los tribunales tienen discreción para desestimar pleitos o eliminar alegaciones al amparo de las Reglas de Procedimiento Civil, no obstante, dicha determinación debe ser una juiciosa y apropiada. Mejías Montalvo *et al.* v. Carrasquillo *et al.*, 185 DPR 288, 298 (2012). Ello es así ya que la desestimación del pleito como sanción final "debe prevalecer únicamente en situaciones extremas […] y *después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y, en todo caso, no debería procederse a ella sin un previo apercibimiento*". Mun. de Arecibo v. Almac. Yakima, 154 DPR 217, 222 (2001). De la parte no corregir la situación conociendo las consecuencias de ello, entonces el tribunal podrá ordenar la desestimación o eliminación de alegaciones, según entienda procedente.

Por su parte, la Regla 39.2 (b) de Procedimiento Civil provee para que se pueda desestimar un pleito por inactividad de seis (6) meses o más, siempre que la misma esté precedida de una orden de mostrar causa que debe ser notificada a los abogados y a las partes para que se expongan las razones por las cuales no se debe desestimar un procedimiento judicial presentado. 32 LPRA Ap. V, R. 39.2 (b).

De ordinario, las Reglas de Procedimiento Civil no aplican automáticamente a los procedimientos administrativos. Pérez v. VPH Motors Corp., 152 DPR 475, 484 (2000). Sin embargo, nuestro Tribunal Supremo ha establecido que en casos apropiados se pueden adoptar normas de procedimiento civil para guiar el desarrollo del proceso administrativo, siempre que no sean incompatibles y contribuyan a una solución justa, rápida y económica de los casos. Íd. pág. 484.

**D.**

Así pues, cónsono con lo anterior, la Junta de Apelaciones adoptó en su Reglamento el Artículo 14, que dispone sobre las facultades que tiene dicho cuerpo para atender los asuntos relacionados a las reclamaciones y alegaciones frívolas, abandono del proceso y prematuridad. En su parte pertinente, establece lo siguiente:

> La Junta, luego de evaluar la totalidad del expediente ante su consideración, podrá decretar el archivo, con perjuicio, total o parcial de una apelación o desestimar una oposición o defensa levantada a la misma por los siguientes fundamentos:
>
> 14.1 Cuando las partes incumplan sin causa justificada una orden de la Junta.
>
> [...]
>
> 14.7 Se entenderá abandonada toda reclamación en la cual no se corrijan las deficiencias señaladas por la Junta, dentro del término que fije ésta, o cuando el caso esté inactivo por seis (6) meses o más y la parte no haya justificado tal inacción. En estos casos, la Junta emitirá una orden de mostrar causa, antes de desestimar la apelación.

**III.**

La señora Rivera Morales alega que la Junta de Apelaciones incidió al desestimar su caso. Ello así, ya que la prueba en el expediente no sustenta los hechos en que se basó la Junta de Apelaciones para desestimar el pleito instado y privar a la Recurrente de su día en corte. Afirma que no hubo tal incumplimiento como señala el ente administrativo, por lo que el cierre y archivo con perjuicio de su caso no procede. Sostiene que del tracto procesal que utilizó la Junta de Apelaciones se desprenden varios errores tanto de hecho como de derecho. Veamos.

En su *Decisión y Orden de Archivo con Perjuicio* la Junta afirma que el tracto procesal del caso revela una situación extrema de abandono total

de la reclamación que presentó la Recurrente. Asegura que ni tan siquiera la señora Rivera Morales justificó su inactividad en el trámite del caso durante los pasados años, como tampoco ha comparecido a las vistas que la Junta de Apelaciones llevó a cabo. No le asiste la razón.

De los hechos anteriormente expuestos, podemos colegir que luego de que la Junta de Apelaciones decidió el 5 de octubre de 2022 reconsiderar su posición y continuar con el trámite del caso, los incumplimientos y atrasos que ocurrieron posteriormente no obedecieron a actuaciones de la Recurrente.

En primer lugar, y tras la reapertura del caso, la Junta le concedió al Fondo un plazo de 30 días para que anunciara su representación legal en el caso. Esto luego de entender que la dilación en adjudicar los méritos de la apelación ante sí se dio por la falta de constitución de la propia Junta, la pandemia del coronavirus, el paso del Huracán María y la falta de representación legal de ambas partes. Así pues, transcurridos cuatro (4) meses de que se emitió la aludida *Orden*, el 22 de febrero de 2023 la Junta emitió una *Orden de Mostrar Causa* dirigida al Fondo por su incumplimiento al dejar de notificar su representación legal dentro del plazo concedido. Procedió también a reseñalar la vista que originalmente estuvo pautada para el 23 de febrero de 2023 y la movió para el 18 de julio del mismo año. Allí, igualmente, ordenó a las partes a que llevaran a cabo el descubrimiento de prueba en el caso para la próxima vista. Tras la presentación de una "**Moción en Cumplimiento de Orden**" por parte del Fondo, la Junta se dio por cumplida.

Luego se suscitó una segunda transferencia de la vista por causa de que la Junta no estaba constituida. Se procedió, entonces, a dejar pautado el señalamiento para el 16 de enero de 2024. Llegado el día de la audiencia, la representación legal de la Recurrente solicitó que la Junta estableciera un calendario estricto en el caso. Tras la oposición del Fondo, la Junta permitió a este último a que presentara una moción dispositiva por la presunta inactividad desplegada por la señora Rivera Morales. Los autos reflejan que esta orden no fue notificada a la señora Rivera Morales para que ésta

adviniera en conocimiento de las consecuencias que podría conllevar la desestimación del caso por inactividad. A pesar de ello, la Junta procedió a desestimar la apelación por inactividad.

Tras analizar exhaustivamente el legajo apelativo ante nuestra consideración, no podemos obviar lo innegable. Estamos ante un caso que se ha postergado innecesariamente por causas que les son atribuibles tanto a las partes como al propio foro administrativo. Así pues, a pesar de que el récord refleja que el proceso no ha sido promovido diligentemente por la Recurrente, lo cierto es que una vez la Junta reconsideró el primer archivo con perjuicio del caso, ninguna de las órdenes posteriores ha sido incumplidas por la señora Rivera Morales. De hecho, se demostró que luego de ello quien incumplió las providencias del foro administrativo lo fue el Fondo y no la Recurrente. Además, contrario a lo alegado por el Fondo en su escrito de Oposición ante este Tribunal, la Recurrente compareció a la vista del 16 de enero de 2024 por conducto de su representación legal. Conviene destacar que se trataba de una vista de estatus, cuya naturaleza no requería su comparecencia personal.

Si bien se podría argumentar que desde el 22 de febrero de 2023 la Junta ordenó a las partes efectuar un descubrimiento de prueba en el caso para la vista que se continuó reseñalando y ni la señora Rivera Morales ni el Fondo cumplieron, la realidad del caso es que, tomando ello como un incumplimiento y/o como inactividad en el trámite del proceso administrativo, nunca se le ha advertido directamente a la señora Rivera Morales sobre las consecuencias de sus presuntos incumplimientos y/o de dejar de promover su caso.

Ello, claramente, atenta contra las garantías mínimas del debido proceso de ley consignadas en la Sección 3.1 de la LPAU, *supra*, que le asisten a la Recurrente. Ciertamente, dejar de apercibirle –con o sin justificación– de las consecuencias de no cumplir los dictámenes de la Junta o de haber dejado de exponer razones justificadas para no promover su caso no se sostiene en derecho. Si bien no hemos hallado expresión alguna del Tribunal Supremo de Puerto Rico en cuanto a la aplicabilidad de la Regla

39.2 (a) y (b) de Procedimiento Civil, *supra*, a procedimientos administrativos, lo cierto es que las mismas no son incompatibles con los procesos cuasijudiciales que se llevan a cabo en las agencias de gobierno. De hecho, la Sección 3.21 de la LPAU, 3 LPRA sec. 9661, recoge los principios consagrados en ambos incisos de la referida Regla 39.2 de Procedimiento Civil, *supra*, pues se limita el alcance de la determinación administrativa en cuanto a la desestimación de una causa de acción al requerir que, entre otras cosas, se le advierta a la parte correspondiente de las consecuencias del incumplimiento con las órdenes que emita el ente administrativo.

En vista de lo anterior, no podemos coincidir con la determinación del foro recurrido, pues es evidente que la Recurrente no incurrió en el abandono de su reclamación. En consideración a lo anterior, no encontramos en este caso circunstancias que justifiquen la desestimación del reclamo que presentó la señora Rivera Morales, luego de que la propia Junta dejara sin efecto la desestimación original en el caso.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, se *revoca* la *Decisión y Orden de Archivo con Perjuicio* que emitió la Junta de Apelaciones para Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado.

Se devuelve el caso a dicho foro para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones